Dr. Walter WOLFE and Dr. Phillip S. Crossen, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Edwin A. SCHROERING, Jr., Commonwealth Attorney for the 30th Judicial District of Kentucky, Individually and as representative of the Commonwealth Attorneys for the 53 Judicial Districts of Kentucky, and Ed Hancock, Attorney General of Kentucky, Defendants.

Civ. A. No. C–74–186–L(B).

United States District Court,
W. D. Kentucky,
Louisville Division.

Nov. 19, 1974.

Robert Allen Sedler, Lexington, Ky., for plaintiffs.

Mary Ann Delaney, Asst. Atty. Gen., Frankfort, Ky., Edwin A. Schroering, Jr., Louisville, Ky., for defendants.

Before LIVELY, Circuit Judge, and BRATCHER and ALLEN, District Judges.

BRATCHER, District Judge.

This is a class action seeking declaratory and injunctive relief against the enforcement of the provisions of the recently-enacted Kentucky abortion Statute, Senate Bill No. 259. Plaintiffs vigorously contend that the overriding purpose and dominant effect of the Statute

under attack is to discourage and interfere with certain clearly defined, constitutionally protected rights of the plaintiffs. They claim it should be invalidated in toto, despite the presence of a severability clause.

Plaintiffs are board-certified obstetrician-gynecologists who perform on a regular and recurring basis medical abortions on female patients desiring to terminate unwanted pregnancies.

Their standing to bring this suit has been questioned by the defendants. The State argues that the controversy affects the pregnant women who desire or may desire to obtain an abortion and does not run to the physicians, and that plaintiffs have no interest in and suffer no injury from the Statute. In Nyberg v. City of Virginia, 495 F.2d 1342 (8th Cir., 1974), the Court, in holding that Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed. 2d 201 (1973), paved the way for doctors to assert their constitutional right to practice medicine, including the performing of abortions, stated:

> "Clearly the claims of medical doctors to 'freely practice medicine according to the highest medical standards without arbitrary outside restraints' are inextricably bound up with the privacy rights of women who seek abortions. YWCA v. Kugler, 342 F.Supp. 1048, 1055 (D.N.J.1972). This is sufficient to present a justiciable controversy and confer standing on the physicians who bring this action." 495 F.2d at page 1344.

We perceive no reason why the rationale employed above should not apply with equal force to the instant case and, accordingly, hold that plaintiffs have standing to prosecute the claims asserted, both individually and for and on behalf of other physicians who are similarly situated, as a class. However, applying the criteria set out under Rule 23(b) of the Federal Rules of Civil Procedure, we find that the plaintiffs do not possess the required attributes to permit them to maintain this action on behalf of the class or subclass designated in their complaint as "their female patients". Applying the same reasoning, the defendant Schroering may not represent all the Commonwealth Attorneys in Kentucky as a class.

In the wake of the Supreme Court decisions of Roe v. Wade, supra, and Doe v. Bolton, supra, the Kentucky General Assembly in the 1974 legislative session enacted Senate Bill No. 259 entitled "An Act Relating to the Regulation of Abortion", which became effective June 21, 1974. It consists of nineteen sections, including an introduction (Section 1), a definition of terms (Section 2), an authorizing regulation provision (Section 15), a penalty provision (Section 17), a severability clause (Section 18), and a repeal of the former anti-abortion laws which have been declared unconstitutional by our Supreme Court. Roe v. Wade, supra, and Doe v. Bolton, supra.

These two recent landmark decisions collectively discuss at length the varying conditions and circumstances under which it is permissible for the state to exercise its power to regulate a woman's private decision to terminate a pregnancy by abortion in order to promote "compelling state interests".

Plaintiffs assert that a substantial portion of the subject legislation, contrary to the mandate of the Supreme Court, is not limited to the protection of the "compelling interest" of the State and is not narrowly drawn to promote those interests. Plaintiffs insist that, notwithstanding the severability clause in the bill, since its ultimate purpose and effect is to interfere with the exercise of constitutionally protected rights, it should be declared invalid in toto as in violation of the Supremacy Clause of the Constitution.

This Court will not attempt to analyze in depth the reasoning of the Supreme Court in the Roe and Doe decisions, but will confine itself to applying the mandate of the Court to the legislation under attack. Although the Supreme

Court has dealt with many of the same questions we have under consideration, in language that is clear and unambiguous, in certain other areas, the decisions have caused some confusion. This Court will examine these areas more closely.

Perhaps the best way to enter the area of what the Supreme Court declared to be the law in this matter is to quote the summary which the Court included at the end of its opinion in the Roe v. Wade case, supra, 410 U.S. at page 164, 93 S.Ct. at page 732:

"To summarize and to repeat:

1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life-saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interests in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

2. The State may define the term 'physician,' as it has been employed in the preceding [numbered] paragraphs of this Part XI of this opinion, to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined."

The Supreme Court then has established as the rule of law regarding regulation of abortions that a state may not disregard the stages of pregnancy or the other interests in drafting such legislation.

■ One area of conflict is the Court's breakdown of the stages of pregnancy with relation to the point where the state's different interests become "compelling". The plaintiffs argue that the Court, by using the term "trimester", intended to divide the period of pregnancy into three three-month stages. This is not the case. A close inspection of the language in the *Roe* decision reveals that the Court spoke only of a single trimester, the first. The Court used no language to indicate that the stages of pregnancy, divided by the points of compelling state interests, were evenly divided.

The language of the *Roe* decision clearly directs that the state must make no laws which interfere in any way with the abortion decision-making process or its effectuation prior to approximately the end of the first trimester. During this period the decision is entirely up to the pregnant woman and her attending physician. The state has no compelling interest.

The Court identified two interests which the state has in the abortion procedure. These interests become compelling only at certain stages of the pregnancy and are limited to specific concerns.

The first interest which the state has and enables it to regulate the abortion process is that of promoting the health of the mother. *Roe* clearly holds that a state may regulate only the abortion procedure as it relates to maternal health but must wait until "the stage subsequent to approximately the end of the first trimester . . . .". 410 U. S. at 164, 93 S.Ct. at 732.

■■ The second interest is that of promoting the potentiality of human life. The Court in *Roe* stated that this interest does not become "compelling"

until the stage subsequent to viability. The Court did not use the term "third trimester" as the plaintiffs claim in their brief (page 6). A major problem arises in determining from the opinion when viability occurs and thus when a state's interest in the potentiality of life attaches. The exact language in *Roe* is that, "Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks". 410 U.S. at 160, 93 S.Ct. at 730. The question, then, is whether the decision flatly holds that viability occurs no sooner than 24 weeks and thus the state's interest is not compelling until then. We think not. Viability is a condition in which the fetus "presumably has the capability of meaningful life outside the mother's womb". *Roe*, 410 U.S. at 163, 93 S.Ct. at 732. Because the point at which viability may be ascertained varies, the state's interest in preserving the fetus also varies as to the time it becomes compelling. Thus, the state will have to rely on the doctors and their medical judgment to determine viability.

The companion case to *Roe*, Doe v. Bolton, supra, further sets out the extent the state could or could not regulate the abortion procedure and should be read in conjunction with *Roe*. In that decision the Court went beyond the compelling interests discussed in *Roe* and held that the state, in regulating to protect its interests, could not impose an "extra layer of regulation" in that they would treat the abortion process differently than other medical procedures.

The state then must treat abortions similarly to other medical procedures; it must wait until its interests as set out in *Roe* become compelling, and it must confine the regulation to only that interest.

This Court cannot romp about capriciously in this matter but is obliged to examine the subject legislation in light of the mandate of the Supreme Court as discussed above. Even though tedious and time-consuming, we will take a section-by-section approach and inspect each questioned provision.

*Section 3.* This section requires the physician, before performing a post-first trimester abortion, to inform the woman of the physical and mental consequences of having or not having the abortion and is clearly in violation of the guidelines set forth by the Supreme Court. For the period subsequent to the first trimester, and prior to viability, the state must confine its regulation to the protection of maternal health and apply it only to the abortion procedure. Roe v. Wade, supra. The section as written intrudes into the abortion decision-making area. Also, as plaintiffs contend and as set out in Word v. Poelker, 495 F.2d 1349 (8th Cir., 1974), the section "seeks to protect interests that are already adequately protected by (1) the physician's medical judgment and professional, ethical standards . . . . .".

*Section 4.* This is the written consent provision. The section provides that the woman must, in all cases, give her written consent to the abortion. This requirement fails to meet constitutional scrutiny in that it is overbroad; it intrudes into the decision-making process and includes the first trimester where the state has no compelling interest. *Roe* clearly holds that the states cannot affect the first trimester period in any way through its regulations.

Subsections 2 and 3 of Section 4 are likewise overbroad in that they require consent by third parties for all abortions performed after the first trimester, which includes the stage before viability. The state's interest in protecting the potentiality of human life is not compelling before viability; thus, as held in Coe v. Gerstein, 376 F.Supp. 695 (S.D.Fla., 1974), ". . . if the State cannot interfere to protect the fetus' interest in its potential life until the compelling point of viability is reached, neither can it interfere on behalf of husbands or parents to protect their interests in that potential life until the fetus becomes viable". Further, as affects the interest of protecting maternal health, the broad provision as written gives

power to the husband or parent to withhold consent without any reason, or without good or sufficient reason, and entirely unconnected with the pregnancy or the woman's health.

Doe v. Rampton, 366 F.Supp. 189 (D. Utah C.D., 1973), invalidated a similar regulation on the basis that it subjected the exercise of the right of privacy of the pregnant woman to the consent of others. We adopt that reasoning to this regulation.

■ The challenge raised as to KRS 214.185 is mooted by the holding as to Section 4. Although abortion is still not included on the list of medical procedures which can be performed on a minor without parental consent, this ruling holds that the specific regulation requiring parental consent for such a procedure is without effect.

Section 6(2) is challenged in connection with Section 11 and will be discussed with that section.

■ *Section 7.* This section prohibits the use of the saline method of abortion after the first trimester of pregnancy. Defendants contend, and it is not seriously questioned, that the prostaglandin method is safer and, in general, clinically more desirable than the saline method. In each process a solution is injected into the amniotic cavity of the patient, causing contractions of the uterus sufficient to expel the fetus through the vagina. The mere fact prostaglandin is safer does not supply sufficient reason to exclude other methods, especially where doing so would unreasonably infringe upon fundamental rights. After an examination of the evidentiary material submitted by the parties, the Court is of the opinion that the saline method of abortion has been wrongfully excluded. Practically all post-first trimester abortions are now performed by the saline method. According to the preponderance of evidence, prostaglandins are manufactured and controlled by Upjohn Company and are available only to a select, elite group of physicians. At present, there are no

physicians in Kentucky competent in the technique of prostaglandin amnio infusion. Consequently, this method of abortion is not readily available in this geographical territory. There are no centers or doctors licensed to perform such a procedure in this area. With prostaglandin unavailable, and saline prohibited, the woman wishing abortion after the first trimester is practically rendered destitute, her only recourse, hysterotomy, being by far the most dangerous of the three methods. Thus, the Court is convinced from the evidence that in order for there to be an effective, safe method, and one which is generally available for the performing of post-first trimester abortions, this section must be held to be invalid.

■ *Section 8.* This section deals with the state's interest in preserving potential human life. The section provides that once it can reasonably be expected for the fetus to have reached viability, no abortion shall be performed except in order to preserve the life or health of the mother. The *Roe* decision clearly gives the state the right to regulate the abortion procedure or even proscribe abortions after the point of viability of the fetus has been reached. This Court finds no objection to the wording of this section. The words " . . . may reasonably be expected to have reached viability . . . ." are within the scope of the Supreme Court decisions and are sufficiently narrow to permit medical judgment to determine viability. Viability cannot be determined by the state; the decision is a medical one and must be left to the professional medical judgment of the woman's physician just as in any other medical procedure. As medical technology advances, the point at which viability may be determined will change. Therefore, as long as viability is the standard or the compelling point, a definite period of weeks cannot be set by the state or the courts.

■ *Section 11.* This section deals with the state not requiring hospitals to perform abortions and an anti-discrimi-

nation clause for hospitals that choose not to perform abortions. This section is challenged in itself and in relation to Section 6(2) which requires that all post-first trimester abortions be performed in a hospital or clinic meeting certain minimal requirements.

This Court believes that the Section 11 and Section 6(2) regulations are unconstitutional in that they single out abortions, thereby treating the abortion process differently from other medical procedures. Nyberg v. City of Virginia, supra, clearly holds that a public hospital "may not arbitrarily preclude abortions from the variety of services offered which require no greater expenditure of available facilities and skills", 495 F.2d at 1346. In order to comply with the constitutional principles set out in *Roe* and *Doe*, the state cannot allow a public hospital to refuse to perform abortions as a policy. Further, the state cannot subtly discourage the performing of abortions by providing that hospitals which do not allow abortions may not be discriminated against when no such provision exists for hospitals which do perform abortions.

The Court finds no objection with Section 6(2) standing alone. While Sections 11 and 6(2) together were tainted with an unconstitutional effect, without Section 11, Section 6(2) does not violate the Constitution.

■ *Section 13.* This section provides for a term of imprisonment for any person who sells or otherwise transfers or permits any form of experimentation on a viable aborted child. The Court finds no objection with the regulation. As held in *Roe*, the state's interest in preserving potential human life becomes compelling at viability. Here, the regulation is in terms of *viable* aborted child; thus, there is no conflict. Again, as to the argument that viability is not stated in terms of weeks, the Supreme Court did not put a definite point in the term of pregnancy at which viability occurs. The Court stated in *Roe* only that viability is usually placed at 28 weeks but could occur earlier at 24 weeks. The Court said nothing to indicate that 24 weeks was the earliest at which viability could occur.

■ *Section 14.* This section provides for a reporting form to be filled out for all abortions performed after the first trimester. The form at first glance seems to fall into the area of an "extra layer of regulation" as rejected in Word v. Poelker, supra. However, this Court finds merit in defendants' contention that there is a need for this type of statistical information. Plaintiffs' major complaint with this section is that the requirement of listing the legal residence of the woman infringes on her basic right of privacy in the abortion decision. The Court is of the opinion that "legal residence" means and shall be confined to the city and county of the woman's residence and not the street address. Applying this construction, the information does not infringe upon the woman's privacy in the abortion decision expounded in Roe.

■ *Section 16.* This section requires a 24-hour waiting period. It is unconstitutional in that it attempts to regulate the abortion decision-making process; and, further, it attempts to regulate the abortion procedure during the first trimester, during which time the state has no compelling interest and thus can pass no regulation affecting this period. Word v. Poelker, supra.

■ *Section 18* is the severability clause. Plaintiffs contend that, as in Doe v. Rampton, supra, the overriding purpose and dominant effect of this statute is unconstitutional in that it wrongfully and improperly interferes with the abortion process, in violation of the standards set by the Supreme Court. We feel that this is not the case with the statute before us. The sections which are not ruled unconstitutional by this decision, in our opinion, do serve a legitimate purpose within the state's authority and interests as described by the Supreme Court in the *Roe* and *Doe* decisions. Since these untainted sections do no violence to either the spirit or let-

ter of these two cases, we therefore do not find it necessary to invalidate the questioned statute in toto.

In summary, a woman's right to terminate an unwanted pregnancy, while not absolute, is a fundamental right which is protected by the due process clause of the Fourteenth Amendment. This right, according to the Roe and Doe decisions, can only be abridged by the state by narrowly drawn regulations which must be confined or restricted to the compelling state interests.

We presume that the defendants, duly elected public officials, will give full credence to this decision; and, for this reason, we hold that it is unnecessary to grant injunctive relief.

Therefore, it is the considered judgment of this Court that the portions of Kentucky's new abortion law specifically designated and discussed hereinabove are unconstitutional and consequently invalid.