[Civ. No. 46967. Second Dist., Div. Two. Nov. 3, 1975.]

JOHN E. HOWARD, as Acting District Attorney, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
CALIFORNIA DIVORCE LEAGUE, Real Party in Interest.

COUNSEL

John H. Larson, County Counsel, and Jan A. Pluim, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Harland W. Braun for Real Party in Interest.

OPINION

**FLEMING, J.**—The District Attorney for the County of Los Angeles seeks to vacate a preliminary injunction of the superior court against all enforcement of Penal Code section 159a, a statute which proscribes as a misdemeanor advertisement of offers to procure or obtain, or to aid in procuring or obtaining, any dissolution or annulment of marriage.[1]

The cause arose from the complaint of real party in interest, California Divorce League (League) for declaratory relief, for violation of civil rights, and for misuse of public funds. According to the complaint, the League is an association of "do-it-yourself divorce businesses" that provide services for persons who desire to represent themselves in marital dissolution proceedings. League members advertise the availability of their services in newspapers and on radio. The complaint asserts that at the insistence of various bar associations, whose members fear loss of income, petitioner "has undertaken the mass prosecution of 'do-it-yourself' divorce clinics with the intent and the purpose of putting them out of business"; he has initiated 28 prosecutions against League members (but not against the League itself) charging violations of section 159a, he has threatened to prosecute newspapers that accept advertisements announcing the availability and services of " 'do-

---

[1]Penal Code section 159a: "Whoever advertises, prints, publishes, distributes, or circulates, or causes to be advertised, printed, published, distributed, or circulated any circular, pamphlet, card, handbill, advertisement, printed paper, book, newspaper, or notice of any kind, offering to procure or obtain, or to aid in procuring or obtaining, any divorce, or the severance, dissolution, or annulment of any marriage, or offering to engage or appear or act as attorney, counsel, or referee in any suit for alimony or divorce, or the severance, dissolution, or annulment of any marriage, either in this state or elsewhere, is guilty of a misdemeanor. This section does not apply to the printing or publishing of any notice or advertisement required or authorized by any law of this state." Formerly section 159½ added by Statutes 1891, chapter 196, section 1, page 279. Amended by Statutes 1893, chapter 34, section 1, page 48. Renumbered section 159a and amended by Statutes 1905, chapter 486, section 1, page 649.

it-yourself' divorce clinics" and he has refused to limit prosecutions to one test case of the statute's constitutionality.

Petitioner has denied the material allegations of the complaint.

Without an evidentiary hearing, the superior court issued a preliminary injunction against further enforcement of the statute based on its conclusion that section 159a "is unconstitutional on its face as an overbroad restriction on free speech" as guaranteed by the First and Fourteenth Amendments. We are thus required to construe the statute in a vacuum without any factual knowledge about the California Divorce League, the operations of its members, and the mode and manner of conducting business by " 'do-it-yourself' divorce clinics." On the basis of our reading of the statute we conclude that on its face section 159a deals with three legitimate areas of public concern over which the state may exercise its police power to promote the public good.

1. The statute purports to discourage the commercial solicitation of marital dissolution proceedings and thereby, inferentially, promote the stability of marital relationships. On its face, therefore, the statute undertakes to regulate conduct integral to an important public concern. "[M]arriage involves interests of basic importance in our society." (*Boddie* v. *Connecticut,* 401 U.S. 371, 376 [28 L.Ed.2d 113, 118, 91 S.Ct. 780].) "The family is the basic unit of our society, the center of the personal affections that ennoble and enrich human life. It channels biological drives that might otherwise become socially destructive; it ensures the care and education of children in a stable environment; it establishes continuity from one generation to another; it nurtures and develops the individual initiative that distinguishes a free people. Since the family is the core of our society, the law seeks to foster and preserve marriage." (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 863-864 [250 P.2d 598].) "It would appear therefore that the Legislature, in enacting section 159a, generally sought to prevent needless divorce and in line with this overriding objective the more particular purpose of the statute is to forbid the encouragement of divorce, that is, the holding out of temptation to choose divorce as a solution to one's marital problems rather than conciliation." (39 Ops.Cal.Atty.Gen. 279, 280.) In view of this strong public interest in the subject matter regulated by the statute, the League carries a heavy burden to establish irreparable injury and demonstrate the improper use of the police power to enforce a seemingly valid criminal statute. (*Pitchess* v. *Superior Court,* 2 Cal.App.3d 644, 651 [83 Cal.Rptr. 35]; *Younger* v. *Harris* (1971) 401 U.S. 37 [27 L.Ed.2d 669,

91 S.Ct. 746]; *Samuels* v. *Mackell* (1971) 401 U.S. 66 [27 L.Ed.2d 688, 91 S.Ct. 764]; *Boyle* v. *Landry* (1971) 401 U.S. 77 [27 L.Ed.2d 696, 91 S.Ct. 758].)

2. The second legitimate area of public concern to which the statute addresses itself is the regulation of persons who undertake to give advice on legal matters, a regulation which includes the determination of their competency to practice law, and which licenses them to represent others in legal proceedings. Traditionally, such regulation includes restrictions on, or prohibition against, the advertisement of such services. ▮ The constitutional protection for free speech does not extend to the delivery of legal or medical or financial advice by persons not licensed to give such advice. The state, to ensure competency in the performance of certain services and to protect its members from exploitation, may regulate, proscribe, and prohibit speech insofar as it involves delivery of the regulated services. California prohibits the practice of law by persons who are not active members of the State Bar (Bus. & Prof. Code, § 6125), and it prohibits nonmembers from advertising that they are engaged in the practice of law (Bus. & Prof. Code, § 6126). Except in the most limited fashion, attorneys themselves are prohibited from advertising and soliciting employment. (Bus. & Prof. Code, § 6076; Rules of Prof. Conduct, rules 2-101, 2-102, 2-103, 2-104, 2-105, 3-101.) Such limitation and prohibition of advertising by those offering regulated services is within the state's police power and is constitutional. (*Barton* v. *State Bar,* 209 Cal. 677 [289 P. 818]; *Semler* v. *Dental Examiners* (1935) 294 U.S. 608 [79 L.Ed. 1086, 55 S.Ct. 570]; *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461].) On its face section 159a proscribes the use of advertising to offer to procure or obtain, or to aid in procuring or obtaining, a dissolution or annulment of marriage. Since dissolution or annulment of marriage necessarily involves legal proceedings, an advertisement offering to procure or obtain such marital dissolution is, presumptively, an offer to perform legal services and hence prohibited by California law. It would, of course, be possible for the Legislature to change its policy and authorize unlicensed persons to aid in procuring and obtaining marriage dissolutions and to allow such persons to advertise their services. As yet this has not occurred, nor does it appear likely to occur, for the trend in modern society runs in the direction of more, rather than less, licensing. We need not, however, speculate on such possibilities. For our purposes it is sufficient to conclude that offers to procure and obtain, or to aid in procuring and obtaining, marriage dissolutions, presumptively fall within

that legitimate area of state concern which involves the delivery of legal advice.

3. The third legitimate area of public concern touched upon by the statute is the state's interest in regulating the use and abuse of its process and courts. One aspect of this regulation involves conduct described at common law as barratry, champerty, and maintenance, that is the stirring up of vexatious lawsuits and the promotion of vexatious litigation. This conduct was a felony at common law (4 Blackstone, pp. 133-135) and has been carried into the Penal Code as a misdemeanor (Pen. Code, §§ 158, 159). These sections indicate the continued presence of a policy against the excitation of vexatious litigation. Prohibitions against the use of advertising to promote litigation and lawsuits harmonize with such a policy. We think it bears some significance on the purpose of section 159a, that the section immediately follows the two sections in the Penal Code that proscribe barratry, thus indicating in some degree the general type of conduct the section is designed to discourage.

In issuing its injunction the superior court relied principally on *Bigelow* v. *Virginia*, 421 U.S. 809, [44 L.Ed.2d 600, 95 S.Ct. 2222]. Bigelow, a Virginia newspaper editor, published an advertisement for a New York abortion clinic. Abortion was legal in New York, but illegal in Virginia. Bigelow was convicted of violating a Virginia misdemeanor statute prohibiting any publication or advertisement which encouraged or prompted the procuring of abortion. The Supreme Court declined to discuss overbreadth, but it ruled that the statute as applied to Bigelow constitutionally infringed protected speech. It declared that a state "may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State." (421 U.S. at pp. 824-825 [44 L.Ed.2d at p. 613].) The court carefully distinguished the cases that showed "a clear relationship between the advertising in question and an activity that the government was legitimately regulating." (421 U.S. at p. 825, fn. 10 [44 L.Ed.2d at pp. 613-614].) A balancing of interests led to the conclusion that the application of the Virginia statute to Bigelow's activity infringed his First Amendment rights. *Bigelow* does not control here. Section 159a regulates activity in California in areas of legitimate public concern to California. *Bigelow* would more nearly apply if we were dealing with the situation of a Mexican divorce lawyer advertising in California his availability to procure divorces in Mexico in accordance with Mexican law.

The other case relied upon by the League is *People* v. *Orser,* 31 Cal.App.3d 528 [107 Cal.Rptr. 458], in which a statute prohibiting advertising about means of abortion was annulled. The court pointed out that subsequent to the enactment of Business and Professions Code section 601, the state had greatly expanded the area of legalized abortions and that section 601 had become defective on its face and overbroad because it purported to ban advertising for both legal and illegal abortions. The situation in *Orser* is quite different from the one now before us, for here the state's policies against advertising of legal services, against marriage dissolution, and against the stirring up of lawsuits remain intact.

The superior court granted preliminary relief on the basis of little more than the allegations in the complaint and the text of the statute. Petitioner denied the material allegations of the complaint, thus making preliminary injunctive relief especially inappropriate. In the present stage of the proceedings we have no established facts whatever about the operation of "divorce clinics" or their manner of doing business. All we know is that the League, a volunteer litigant, claims to represent a number of unnamed and unidentified "divorce clinics" which are being prosecuted on unspecified facts. On the record before us we conclude the statute is valid on its face, the scope of its regulation falls within the police power of the state, and the preliminary injunction was improvidently issued.

In holding the statute constitutional we do not reject the possibility that in specific instances the statute may be misapplied. (*Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].) It will be time enough to rule on such a possibility when an injured litigant comes before us with a valid grievance and shows an abusive interpretation of the statute. (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 609-618 [37 L.Ed.2d 830, 838-844, 93 S.Ct. 2908].)

The alternative writ is discharged. Let a peremptory writ issue directing the superior court to vacate its order granting the preliminary injunction.

Roth, P. J., and Beach, J., concurred.

On December 2, 1975, the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied January 28, 1976. Tobriner, J., was of the opinion that the petition should be granted.