TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 90-926 |
| of | : | |
| | : | |
| DANIEL E. LUNGREN | : | <u>JUNE 25, 1991</u> |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE DAVID ROBERTI, MEMBER OF THE SENATE, has requested an opinion on the following question:

Under California law is it legal for anyone other than a licensed physician to perform an abortion and if so, under what circumstances?

CONCLUSION

Under California law only a licensed physician may perform an abortion.

ANALYSIS

Abortion is the deliberate termination of pregnancy by causing a miscarriage of the woman. (Cf. *People* v. *Belous* (1969) 71 Cal.2d 954, 969, cert. den. (1970) 397 U.S. 915; *People* v. *Wilson* (1942) 54 Cal.App.2d 434, 448; *People* v. *Luckett* (1937) 23 Cal.App.2d 539, 540-541.) Except in cases when it was necessary to save life of the mother, abortion was generally proscribed in California from admission until 1967. (Stats. 1850, ch. 99, p. 233, § 45; Stats. 1935, ch. 528, p. 1605, § 1; cf. *People* v. *Barksdale* (1972) 8 Cal.3d 320, 326; *People* v. *Belous*, *supra*, 71 Cal.2d at 959.) In that year the Legislature enacted the Therapeutic Abortion Act ["the Act"] (Health & Saf. Code, § 25950 et seq.) to extend the lawful grounds for which an abortion could be obtained and to delineate the circumstances under which one might be performed. (Stats. 1967, ch. 327, p. 1521, § 1.) The same chapter of legislation also amended the provisions of the Penal Code dealing with abortion to reflect those new parameters. (Stats. 1967, ch. 327, p. 1523, § 3, amending Pen. Code, §§ 272-276.)

While major provisions of the Therapeutic Abortion Act have been declared unconstitutional our Supreme Court has said that they are severable from the rest. (Cf. *People* v. *Barksdale*, *supra*, 8 Cal.3d at 333, 334; see also, *People* v. *Orser* (1973) 31 Cal.App.3d 528, 536; 65 Ops.Cal.Atty.Gen. 261, 266-267 (1982).) We will conclude that "shorn of its invalid provisions" (*People* v. *Orser*, *supra*), the remainder in conjunction with section 274 of the Penal Code provides the answer to the question asked, i.e., who may perform an abortion in California. The answer will be that only a licensed physician may do so.

Section 274 of the Penal Code currently provides as follows:

"Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, except as provided in the Therapeutic Abortion Act, Chapter 11 (commencing with Section 25950) of Division 20 of the Health and Safety Code, is punishable by imprisonment in the state prison." (Pen. Code, § 274 as amended by Stats. 1967, ch. 327, p. 1523, § 3; Stats. 1976, ch. 1139, p. 5109, § 167.)

Section 274 is thus "directed toward the abortionist" (*People* v. *Belous*, *supra*, 71 Cal.2d at 969) and makes it illegal for anyone to perform an abortion except pursuant to the provisions of the Therapeutic Abortion Act, i.e., sections 25950 through 25958 of the Health and Safety Code.[1] We must therefore examine that Act to see who can perform an abortion in California. That not only takes us to examine its wording, which is relatively simple for our purposes, but also to determine whether judicial pronouncements rendered subsequent to its enactment have left any of it still enforceable.

Section 25951 of the Health and Safety Code, here annotated with other salient provisions of the Therapeutic Abortion Act, provides as follows:

"A holder of the physician's and surgeon's certificate, as defined in the Business and Professions Code, is authorized to perform an abortion or aid or assist or attempt an abortion, only if each of the following requirements is met:

---

[1]We were originally asked who may perform a "surgical" abortion under California law. Section 274 does not differentiate among the ways an abortion might be produced, i.e., on the abortifacient that is employed, and our answer does not depend on that.

"(a) The abortion takes place in a hospital which is accredited by the Joint Commission on Accreditation of Hospitals.

"(b) The abortion is approved in advance by a committee of the medical staff of the hospital, which committee is established and maintained in accordance with standards promulgated by the Joint Commission on Accreditation of Hospitals. [The committee may never consist of fewer than two licensed physicians and surgeons and a committee of three is required if the proposed termination of pregnancy occurs after the 13th week. (§ 25953.) Unanimous consent is required where the committee consists of no more than three members. (§ 25951, subd. (b).)]

"(c) The Committee of the Medical Staff finds that one or more of the following conditions exist: [¶](1) There is substantial risk that the continuance of the pregnancy would gravely impair the physical or mental health of the mother (cf. § 25954 defining "mental health" as "mental illness to the extent that the woman is dangerous to herself or to the person or property of others or is in need of supervision or restraint."]; [¶](2) The pregnancy resulted from rape or incest. [Before a committee may approve an application on this ground, it must submit the application to the district attorney for his or her evaluation and determination that probable cause exists to believe that the pregnancy did result from rape or incest (§ 25952, subd. (a); if the D.A. finds that not to have been the case, a procedure for judicial review and determination of the matter is provided (*id.*, subd. (b)).]"

[In no event may a termination of pregnancy be approved after the 20th week. (§ 25953, last sent.)]

In *People* v. *Barksdale*, *supra*, 8 Cal.3d 320, our Supreme Court held that many of these provisions were unconstitutional and unenforceable: It found that those setting forth the medical criteria upon which abortions could be approved (i.e., § 25951, subds. (b),(c); § 25954) were "so imprecise" as to be "impermissibly vague" and "not sufficiently certain to meet minimal standards of due process." (8 Cal.3d at 328, 332.) Consequently it also found that those establishing medical committees and their procedures (§ 25951, subd.(b); 25953, sent. #1) and those that brought involvement of district attorneys and courts into the abortion equation in cases of rape and incest (§ 25952) were

invalid because without valid criteria upon which to operate, they had no independent functional purpose.  (8 Cal.3d at 338.)[2]

What remained were (i) the provision of the Act requiring abortions to be performed by licensed physicians and surgeons (§ 25952, preamble); (ii) the provision requiring abortions to be performed in hospitals accredited by the Joint Commission on Accreditation of Hospitals (*id*., subd. (a); and (iii) the provision forbidding abortions after the 20 [th] week of pregnancy (§ 25953, last sentence).  These provisions were held to be distinct from the invalid ones, and severable from them.  (8 Cal.3d at 334.)  The court found them constitutionally valid.  ( *Id*., at 334-338; see also, 50 Ops.Cal.Atty.Gen. 114, 115 (1967) [requiring JCAH accreditation].)  In summary, the court concluded as follows:

> "We conclude that Penal Code section 274 is valid in its entirety.  We perceive no constitutional impediments to ... those portions of section 25951 that require abortions to be performed by holders of physician's and surgeon's certificates in hospitals accredited by the Joint Commission on Accreditation of Hospitals, and to that portion of section 25953 limiting the performance of abortions to the first 20 weeks of pregnancies."  (8 Cal.3d at 338.)

However, exactly two months after *Barksdale* was decided the United States Supreme Court rendered decisions in *Doe* v. *Bolton* (1973) 410 U.S. 179 and *Roe* v. *Wade* (1973) 410 U.S. 113.  As discussed in two prior Opinions of this Office, 65 Ops.Cal.Atty.Gen. 261 (1982) and 57 Ops.Cal.Atty.Gen. 58 (1974), those decisions call into question the validity of the last two of the above-described three conditions of the Therapeutic Abortion Act that remained after *Barksdale*.

A.   The Limitation In Section 25953 That All Abortions Must Be Performed Within The First Twenty Weeks of Pregnancy .
Under the *Roe* analysis, a state's ability to proscribe all abortions is based on its "important and legitimate interest" in protecting the potentiality of human life, i.e., the fetus.  But that interest only becomes "compelling" and exercisable at the point in a pregnancy when the fetus has become viable, i.e., when it is "potentially able to live outside the mother's womb, albeit with artificial aid.[]"  (*Roe* v. *Wade*, *supra*, 410 U.S. at 160, cf.

---

[2]See also, *Doe* v. *Bolton* (1973) 410 U.S. 179, 195-198 [interposition of a hospital abortion committee is unduly restrictive of the mother's right to receive medical care in accordance with her licensed physician's best judgment], 198-200 [required acquiescence by co-practitioners has no rational connection with the patient's needs and unduly infringes on her physician's right to practice].

*id.,* at 163; but see *Webster* v. *Reproductive Health Serv.* (1989) 492 U.S. __; 106 L.Ed.2d 410, 436.) The *Roe* court found that a state may not proscribe abortions before that time; and it may only do so afterwards in cases where an abortion is not "necessary to preserve the life or health of the mother." (*Roe* v. *Wade*, *supra* at 164; cf. *Id.,* at 159, 163-165; 65 Ops.Cal.Atty.Gen. *supra*, at 263.) In addition, a state may not statutorily fix a particular number of weeks (or prescribe another determinant) to say when viability occurs so as to exercise its interest in protecting the fetus by banning all abortions thereafter. (*Colautti* v. *Franklin* (1979) 439 U.S. 379, 388-389; *Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52, 63-65; *Wolfe* v. *Schroering* (W.D. Ky. 1974) 388 F.Supp. 631, 637; *Hodgson* v. *Anderson* (D. Minn. 1974) 378 F.Supp. 1008, 1016-1017; 65 Ops.Cal.Atty.Gen., *supra*, at 263.)

In 65 Ops.Cal.Atty.Gen. 261, *supra*, we concluded upon these authorities that the proscription of the last sentence of section 25953 which banned all abortions after the 20th week of pregnancy was unconstitutional. This was because it prevented abortions which might be necessary to preserve the life or health of the mother after that time, and because it forbade abortions between the 20th week of pregnancy and the time when a fetus would be viable.[3] (65 Ops.Cal.Atty.Gen. at 265.) But we "corrected" that unconstitutional overbreadth of the section by "letting its proscription against abortion after the 20th week of pregnancy stand but [limiting it] to those abortions which may constitutionally be banned." (*Ibid.*)

B. <u>The Requirement That Abortions Be Performed In JCAH Hospitals.</u> Subdivision (a) of section 25952 of the Therapeutic Abortion Act provides that as a requirement for a physician to perform an abortion, that "[t]he abortion take[] place in a hospital which is accredited by the Joint Commission on Accreditation of Hospitals."

As stated in *Roe*, a State's ability to regulate in this manner and prescribe the type of facility in which abortions are to be performed may only take place "to the extent that the regulation reasonably relates to the preservation and protection of maternal health." (410 U.S. at 163, 164; see also, *Akron* v. *Akron Center For Reproductive Health* (1983) 462 U.S. 416, 430-431, 433, 434,; 57 Ops.Cal.Atty.Gen. 28, 31, *supra*.) Accordingly, the High Court has held that a State (or a local agency) may not require all second-

---

[3]"Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks.[]" (*Roe* v. *Wade*, *supra*, 410 U.S. at 160; see also, *Hodgson* v. *Anderson*, *supra*, 578 F.Supp. at 1016; but see *Webster* v. *Reproductive Health Serv.*, *supra*, 106 L.Ed.2d at 434 [23½ to 24 weeks gestation is the earliest point in pregnancy where a reasonable possibility of viability exists, but there may be a 4-week error in estimating gestational age].)

trimester abortions to be performed in general acute-care, full-service hospitals because that is not medically necessary to protect a woman's health. (*Planned Parenthood Assn.* v. *Ashcroft* (1983) 462 U.S. 476, 481-482; *Akron* v. *Akron Center For Reproductive Health*, *supra* at 431-439; *Doe* v. *Bolton*, *supra*, 410 U.S. at 195.)  In addition, the United States Supreme Court has cited a lack of medical justification to specifically strike down a JCAH-accreditation requirement. (*Planned Parenthood Assn.* v. *Ashcroft*, *supra*, 462 U.S. at 481-482; *Akron* v. *Akron Center For Reproductive Health*, *supra*, 462 U.S. at 432-434; *Doe* v. *Bolton*, *supra*, 410 U.S. at 193-195, 201 [first- and second-trimester abortions].)  We conclude that the requirement of subdivision (a) of section 25952, that all California abortions be performed in hospitals which have been accredited by the JCAH, would not be sustainable under the Supreme Courts expressed line of reasoning.

What then is left of the original Therapeutic Abortion Act?  That would be the preamble to section 25951 and the last sentence of section 25953 as construed by our prior Opinion, thus:

"A holder of the physician's and surgeon's certificate, as defined in the Business and Professions Code, is authorized to perform an abortion or aid or assist or attempt an abortion, only if each of the following requirements is met:

"~~(a) The abortion takes place in a [JCAH] hospital.~~

"~~(b) The abortion is approved in advance by a committee of the medical staff of the hospital....~~

"~~(c) The Committee of the Medical Staff finds....~~" (§ 25951.)

"In no event may a termination of pregnancy be approved after ~~the 20th week~~ [the fetus becomes viable, except to preserve the life or health of the mother]." (§ 25953.)

Section 274 of the Penal Code makes it illegal to perform an abortion in California "except as provided in the Therapeutic Abortion Act...."  The provisions of that Act state that a physician may perform an abortion only if certain requirements are met.  But those requirements are no longer constitutionally valid. Does this mean that the statutory scheme in its entirety must fall, or is there still a valid statement left that only physicians may perform abortions?

As mentioned at the outset, in *People* v. *Barksdale* the California Supreme Court found the provisions of the Therapeutic Abortion Act were severable, and that shorn of its invalid provisions, it still permitted abortions to be performed pursuant

to its remaining terms. (8 Cal.3d at 333-334, 338, 339; see also, *People* v. *Orser*, *supra*, 31 Cal.App.3d at 536.) Fewer valid provisions remain now, but one of them still "require[s] abortions to be performed by holders of physician's and surgeon's certificates." (§ 25951, preamble, as paraphrased in *People* v. *Barksdale*, *supra* at 338.) In *Barksdale* the Court "perceive[d] no constitutional impediment" to that requirement. (8 Cal.3d at 338.) That continues to correctly state the law in the situation even after *Roe* v. *Wade* and its progeny.

In *Connecticut* v. *Menillo* (1975) 423 U.S. 9, the High Court specifically held that *Roe* did not require the invalidation of the provisions of state abortion statutes that prohibited nonphysicians from performing abortions even though the other provisions of those statutes were no longer valid in light of that case:

> "In *Roe* we held that ... the Texas abortion statutes had to fall `as a unit,' [citation], and it is that statement which the Connecticut Supreme Court and courts in some other States have read to require the invalidation of their own statutes even as applied to abortions performed by nonphysicians.[] In context, however, our statement had no such effect. .... [¶] [T]he rationale of our decision supports continued enforceability of criminal abortion statutes against nonphysicians. *Roe* teaches that a State cannot restrict a decision by a woman, with the advice of her physician, to terminate her pregnancy during the first trimester because neither its interest in maternal health nor its interest in the potential life of the fetus is sufficiently great at that stage. But the insufficiency of the State's interest in maternal health is predicated upon the first trimester abortion's being as safe for the woman as normal childbirth at term, and that predicate holds true only if the abortion is performed by medically competent personnel under conditions insuring maximum safety for the woman. [Citation.] Even during the first trimester of pregnancy, therefore, prosecutions for abortions conducted by nonphysicians infringe upon no realm of personal privacy secured by the Constitution against state interference. And after the first trimester the ever-increasing state interest in maternal health provides additional justification for such prosecutions. [¶] As far as this Court and the Federal Constitution are concerned, Connecticut's statute remains fully effective against performance of abortions by nonphysicians." (423 U.S. at 10-11; emphases added; accord *Akron* v. *Akron Center For Reproductive Health*, *supra*, 462 U.S. at 447.)

More recently the Court has said that "on this basis ... it is [still] permissible for the States to impose criminal sanctions on the performance of an abortion by a nonphysician."  (*Akron* v. *Akron Center For Reproductive Health*, *supra*, 462 U.S. at 430 fn. 12; see also, *Hodgson* v. *Anderson*, *supra*, 378 F.Supp. at 1016.)

California has done so in section 274 of the Penal Code, which remains "valid in its entirety" (*People* v. *Barksdale*, *supra*, 8 Cal.3d at 338), in conjunction with the preamble to section 25952 of the Therapeutic Abortion Law, the validity of which has never been questioned.  Upon those statutes we conclude that only a licensed physician may perform an abortion.

However, one final matter must be discussed.  Suggestion has been made that section 3502 of the Physician Assistant Practice Act (Bus. & Prof. Code, § 3500 et seq.) and the regulations of the Division of Allied Health Professions of the Board of Medical Quality Assurance provide special authority for physician assistants to perform abortions in California.  Section 3502 provides that "Notwithstanding any other provisions of law, a physician assistant may perform those medical services as set forth by regulations of the [Division of Allied Health Professions] when such services are rendered under the supervision of a licensed physician...."  The implementing regulations of the Division essentially permit a physician assistant to perform any procedure, consistent with his or her competency, education, training, and experience, that has been delegated by a supervising physician.  (See e.g. 16 Code Cal.Regs. §§ 1399.540, 1399.541(b),(c), 1399.542.)

It is true that the phrase "notwithstanding any other provision of law" usually indicates that the provisions of a statute are to be considered sui generis and take precedence over all other law.  (See *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678 fn. 3; *State of California* v. *Superior Court* (1965) 238 Cal.App.2d 691, 695-696.)  Nevertheless, we decline to accept the suggestion that the carte blanche of section 3502 coupled with the broad language of the implementing regulations provides authority for physician assistants to perform abortions when delegated to do so by a supervising physician, "notwithstanding" the provisions of section 274 of the Penal Code and those of the Therapeutic Abortion Act.

The authority accorded physician assistants by section 3502 and the Division's regulations is found in the context of describing the scope of their professional practice.  In contrast, the prohibition contained in section 274 of the Penal Code appears in an entirely different setting; it defines criminal activity and represents a long standing policy against the performance of abortions except as is specifically permitted by law.  Consistent with that the Therapeutic Abortion Act was carefully crafted after considerable deliberation to permit physicians, and physicians

alone, to perform abortions in particularly described circumstances without violating the Penal Code's prohibition.

Thus we cannot accept the notion that the Legislature meant to gainsay that carefully tailored and highly specific determination when it later adopted the general language of the Physician Assistant Practice Act. Moreover, if the delegation of authority in section 3502 were construed as broadly suggested, substantial question regarding its constitutionality would arise (cf. *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 375-377; *CREED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 325; 71 Ops.Cal.Atty.Gen. 296, 299 fn. 2 (1988), and if the Division's regulations were construed without heed to the provisions of the Penal Code, question of their validity would be raised (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419-420; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737).

We therefore conclude that a physician assistant may not perform an abortion in California. Under California law, only a licensed physician may do so.

* * * * *