In the Matter of DIANE, a minor.

Court of Chancery of Delaware,
New Castle.

March 13, 1974.

Barry W. Meekins, Deputy Atty. Gen., Wilmington, for petitioner.

James F. Boomer, Community Legal Aid Society, Wilmington, for Diane's father.

BROWN, Vice Chancellor:

The Division of Social Services, a division of the Department of Health and Social Services of the State of Delaware, a State agency, has petitioned to be appointed guardian of the person of a sixteen-year-old minor, hereafter referred to an "Diane". The facts and allegations indicate that Diane's mother deserted her, her father and five other children in 1962 and that her whereabouts have ever since remained unknown. The father was unable to maintain employment and provide adequate care for the children alone, and therefore sought assistance from a Catholic social service agency. As a result, Diane's custody was eventually placed in the State agency by order of The Family Court of this State. Since that time she has been predominantly maintained in foster home placement pursuant to this custody award with the exception of one or more intervals since 1968 when she was returned to the home of her father. Even though the father remarried in 1968, the return to his home proved unworkable and she was returned to foster care. At present she resides in the Children's Home in Claymont, Delaware, and her lawful custody is in the petitioner by virtue of the order of The Family Court.

In February of this year it was discovered that Diane was pregnant. She is also unwed. Upon discovery and medical verification of her condition she was given counseling by both the Division of Social Services and Planned Parenthood. She was advised that her options were three-fold: (1) to give birth to her child and keep it, with appropriate assistance from the State; (2) to give birth, with the child thereafter being placed for adoption by others; and (3) to have a therapeutic abortion. She has chosen the latter.

At the insistence of the Division of Social Services she notified her father of her situation and of her desire to have an

abortion. On the following day her father was personally interviewed by her social worker on the same subject. His initial reaction was one of exasperation and that he would sign the necessary authorization for her to have the abortion at such time as she entered the hospital. He reserved the right, however, to confer with his priest before making a final decision.

Thereafter, Diane's father did confer with his priest and was advised that due to the principles of his religion it would be improper for him to consent to the abortion. As a result, the father now refuses to give his consent because of his religious scruples. Thus, the petitioner, which is Diane's legal custodian and which has been her custodian for many years, now seeks to be made her legal guardian so that it may give consent to the abortion and carry out Diane's wishes. There is no evidence or claim at this point that the abortion is in any way necessary for the protection of Diane's health or physical or emotional well-being. Rather it is obvious that the petition has been brought for the sole purpose of providing a way to carry out Diane's own decision. In fact, Diane states that the petition is brought at her request.

Thus, the question becomes pure and simple: Should this Court appoint a guardian for Diane under the circumstances here present so that she may seek an abortion over the objection of her natural parent based on his religious beliefs? Since Diane is now near her 20th week of pregnancy, an immediate answer is necessitated.

Delaware statutes dealing with the termination of a human pregnancy are found at 24 Del.C. § 1790 et seq. In general, it is provided that no person shall terminate a pregnancy except that it may be accomplished by a licensed physician at a properly accredited hospital upon the authorization of a hospital abortion review authority provided one or more of the following conditions are present: (1) continuation of the pregnancy is likely to result in the death of the mother; (2) there is substan-

tial risk of the birth of the child with grave and permanent physical deformity or mental retardation; (3) the pregnancy has resulted from incest or rape; or (4) continuation of the pregnancy would involve substantial risk of permanent injury to the physical or mental health of the mother. 24 Del.C. § 1790(a).

By 24 Del.C. § 1790(b) it is provided that in no event shall the termination of a human pregnancy take place after more than 20 weeks of gestation have passed (unless it is necessary to the survival of the mother or the fetus is dead) and unless two licensed physicians, or the expectant mother's personal physician and a licensed psychiatrist, shall certify to the abortion review authority of the hospital that they are of the opinion, formed in good faith, that one of the foregoing circumstances previously set forth is present (excepting where the pregnancy has resulted from rape). Then comes the following language of 24 Del.C. § 1790(b)(3) which is germane to the present matter:

> "(3) In the case of an unmarried female under the age of 18 . . . there is filed with the hospital abortion review authority the written consent of the parents or guardians as are then residing in the same household with the consenting female, or if such consenting female does not reside in the same household with either of her parents or guardians, then with the written consent of 1 of her parents or guardians."

Applied to the present situation, Diane does not reside in the same household with either her mother or father, and she has no guardian. Her father will not consent, and, since the whereabouts of her mother are unknown, she cannot obtain the consent of either parent. Since the aforesaid statutory language necessarily provides that in the absence of a guardian the failure to obtain the consent of either parent will be controlling, it does not seem appropriate to appoint a guardian over the objection of the sole available parent in order to cir-

cumvent the legislative intent absent some compelling medical reason therefor.

However, it does not appear necessary to make a determination on this basis. Although it has not been cited by either of the parties, the language of 13 Del.C. § 708 cannot be overlooked. This statute, in pertinent part, reads as follows:

"(a) A minor 12 years or age or over who professes to be either pregnant or afflicted with contagious, infectious or communicable diseases . . . may give written consent to any licensed physician, hospital or public clinic for any diagnostic and lawful therapeutic procedures, medical or surgical care and treatment . . .

"(b) Consent so given by a minor 12 years of age or over shall, notwithstanding his minority, be valid and legally effective for all purposes, regardless of whether such minor's profession of pregnancy or contagious disease is subsequently medically confirmed, and shall be binding upon such minor, his parents, legal guardians, spouse, heirs, executors, and administrators as effectively as if the minor were 21 years of age or over at the time of giving of the consent. A minor giving the consent shall be deemed to have the same legal capacity to act and the same legal obligations with regard to giving consent as if the minor were 21 years of age or over. Consent so given shall not be subject to later disaffirmance by reason of such minority; and the consent of no other person or Court shall be necessary for the performance of the diagnostic and lawful therapeutic procedures, medical or surgical care and treatment rendered such minor.

\* \* \* \* \* \*

"(d) Lawful therapeutic procedures permitted hereunder shall include abortion as permitted under the law of this State and any subsequent amendments thereof."

It is obvious by their terms that 24 Del. C. § 1790 and 13 Del.C. § 708 are in direct conflict. The former requires the consent of parents or guardian before a pregnant female under 18 can seek an abortion while the latter provides that a pregnant female over 12 can give her own consent just as though she were 21 which, if given, is binding on everyone, including parents and guardians.

■ Where two statutes speak to the same subject matter they must be construed, if possible, so as to reconcile them and remove any inconsistency or repugnancy. Wright v. Husbands, Del.Supr., 36 Del.Ch. 416, 131 A.2d 322 (1957). Repeal by implication is not favored and only occurs when the two statutes are so inconsistent that reconciliation is impossible. Hodson v. Hodson Corp., 32 Del.Ch. 76, 80 A.2d 180 (1951). However, if they are inconsistent, the latest in time will prevail. Wright v. Husbands, *supra.*

■ Section 1790 was added to the Delaware Code by 57 Del.Laws, Ch. 145, effective June 17, 1969. Section 708 was added by 57 Del.Laws, Ch. 369, effective April 16, 1970. Both have since been amended, but not in any material way. Section 708 was amended June 26, 1972 to rewrite the catchline. Section 1790 was amended July 12, 1972, but only to reduce the age of the female from 19 to 18. This latter was accomplished by a legislative act which amended numerous existing statutes so as to reduce the age of majority in this State to 18 years and, in this context, it cannot be assumed that it was the purpose of the General Assembly to thereby repeal by implication a statute on which it had amended the catchline some three weeks earlier. Under the circumstances, I am of the opinion that 13 Del.C. § 708 is the controlling statute since it was enacted latest in time.

Therefore, Diane is authorized by statute to give her own consent to a therapeutic abortion, and her decision is binding on her father by the terms of the statute. Since the sole basis for the petition of the Division of Social Services to be appointed

her guardian is to provide a means for giving consent on her behalf, it follows that the petition should be denied.*

It is so ordered.

---

* In passing, and for whatever value it may have, I note that the United States Supreme Court has held, among other things, in the recent decisions of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L. Ed.2d 201 (1973) that where an adult female is in the second trimester of her pregnancy, her right to an abortion is subject only to the interest which the State has in promoting the health of the mother. In other words, prior to the end of the second trimester abortion procedures may be regulated in ways reasonably related to maternal health but the right to have an abortion may not be otherwise qualified. Since 13 Del.C. § 708 provides that a pregnant minor giving consent to have an abortion shall be deemed to have "the same capacity to act" as if she were 21 years of age or over, it would appear that the effect of the statute now is to grant to female minors over age 12 the same rights to an abortion as are extended to adults under the aforesaid decisions of the United States Supreme Court. Whether or not this situation calls for further legislative scrutiny is a matter for the General Assembly.