**Fatima FOE, Plaintiff,**

v.

**John D. VANDERHOOF, Governor of the State of Colorado,* et al., Defendants.**

**Civ. A. No. 74–F–418.**

United States District Court, D. Colorado.

Feb. 5, 1975.

As Amended Feb. 10, 1975.

designated official capacities at the time of trial.

Jon Nicholls, Legal Aid Society of Metropolitan Denver, Barbara J. Kelley, East Denver Legal Services, Denver, Colo., Sheila H. Meer, Adams County Legal Services, Brighton, Colo., for plaintiff.

John P. Moore,* Atty. Gen. of Colo., Irvin M. Kent,* Asst. Atty. Gen., Denver, Colo., for defendants John D. Vanderhoof and John P. Moore.

Dale Tooley, Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Deputy, Second Judicial Dist., Larry Gagnon, Asst. Dist. Atty., Second Judicial Dist., Denver, Colo., for defendant Dale Tooley.

Charles J. Onofrio, Denver, Colo., for defendant Jane Doe.

## MEMORANDUM OPINION AND ORDER

FINESILVER, Judge.

In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court held that the decision of a woman to ter-

minate her pregnancy involved the exercise of the fundamental right of individual privacy, protected by the Fourteenth Amendment's due process clause, and that this decision could be abridged only by narrowly drawn legislative enactments designed to serve compelling state interests. The anti-abortion statutes challeged in those cases were declared unconstitutional.

This action involves an unmarried female under eighteen years of age and presents legal issues arising from the implications of the *Roe* and *Doe* rulings. Pursuant to 42 U.S.C. § 1983, plaintiff seeks a declaratory judgment holding unconstitutional that portion of Colorado law, C.R.S. § 18–6–101(1) (1973) which requires that before an unmarried woman under the age of eighteen may intentionally terminate her pregnancy for any reason, she must have the consent of her parents or a guardian. Colorado criminal statute, C.R.S. § 18–6–102 (1973) makes it a criminal felony for any person to terminate a pregnancy in violation of C.R.S. § 18–6–101 (1973).

Jurisdiction is conferred pursuant to 28 U.S.C. §§ 1343(3), 2201, and 2202.

## THE HISTORY OF THE LITIGATION

Due to the imminency of the matter and following testimony of medical specialists and others, on May 16, 1974, we issued a temporary restraining order enjoining the enforcement of the Colorado statutes against any physician who terminated the pregnancy of plaintiff, Fatima Foe.

We adopt and affirm that order in which we found that plaintiff was a pregnant unmarried sixteen year old Colorado resident who already had a five month old child. Plaintiff was of the firm and determined conviction to have her current pregnancy terminated. We observed that plaintiff was an alert, mature, and reasonably intelligent young person who was living in a foster home with her child. She was supported by public assistance, and many aspects of emancipation were present. Plaintiff intended at some time to return to school and hoped to obtain a job and support herself and her child. Her mother refused consent to plaintiff's abortion thus making it impossible for plaintiff to obtain a legal abortion in Colorado without court order.

Prior to the time of the hearing on the temporary restraining order, plaintiff had met with her mother, a doctor, attorneys, and her social worker to discuss facets of her pregnancy, abortion procedures, and consequences of her decision. We found that she was adequately and professionally counseled and that her decision to terminate her pregnancy was an informed and intelligent decision based on her "projections for her future, her best interests and that of her five month old child, and realities of her present dilemma . . . and on a clear understanding of the consequences."

We additionally found that plaintiff had applied for a medical abortion to be performed under acceptable medical professional standards by a licensed physician; and further, that attending physicians agreed that an abortion was appropriate for plaintiff in light of all the circumstances. We appointed an additional obstetrician and a psychiatrist to examine and counsel plaintiff. They agreed that plaintiff should be granted an abortion for her own physical and mental well-being and welfare and that this medical procedure was in her best interests.

Subsequent to the issuance of our order, plaintiff underwent a medical procedure at a Denver hospital resulting in an abortion on May 17, 1974. At the time the abortion was performed, plaintiff was approximately 17–20 weeks into the gestation period. Thus she was in the second trimester of pregnancy. The abortion resulted in the removal from plaintiff of a nonviable fetus weighing 155 grams (approximately 4 ounces). Plaintiff suffered no significant ill effects or complications as a result of the operation. After May, 1974 until August, 1974, plaintiff continued to live in a foster home in Denver and was em-

ployed at the Air Force Accounting Finance Center for a portion of this period. At the time of trial on the broader issues here considered, plaintiff was living in Kansas City with relatives.

## LEGAL CONCLUSIONS

### I

Plaintiff contends that the Colorado statute is violative of her right to privacy as guaranteed by the First, Ninth, and Fourteenth Amendments and of her right to equal protection of the law under the Fourteenth Amendment. Plaintiff relies upon the decisions in *Roe* and *Doe, supra,* in support of her position that the right to privacy as encompassing the decision to terminate a pregnancy extends to minors and further that the state cannot justify the statute's infringement upon that right.

Defendants assert that the challenged statute is constitutional as (a) the state has compelling interests in requiring parental consent before an abortion may be performed on a minor, (b) the state's authority in affairs of minors is greater than in the case of adults, and (c) plaintiff's constitutional rights are adequately protected under the Colorado Children's Code, C.R.S. § 19–1–101 et seq. (1973).

The central issues involved in this litigation are: (a) Does the right to privacy as developed in *Roe* and *Doe* extend to minors? (b) Has the state displayed any compelling interests which justify the difference in treatment between minors and adults contained in C. R.S. § 18–6–101(1) (1973)? Other issues involve the question of plaintiff's standing to sue, the necessity of appointment of a *guardian ad litem,* and certification of questions to the Colorado Supreme Court.

### II

After careful consideration of the issues involved, we find that C.R.S. § 18–6–101(1) (1973) as it relates to the necessity of parental or guardian consent in order for minors to obtain legal abortions is unconstitutional. The statute is overbroad in its reach and is violative of the fundamental right to privacy. Our analysis of the legal issues involved follows.

## DOES THE RIGHT TO PRIVACY EXTEND TO MINORS?

### I

■ A fundamental right to privacy for individuals is not specifically provided for in the United States Constitution; however, the Supreme Court has recognized that such a right is implicit within various amendments to the Constitution: *i. e.,* the First Amendment, Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969); the Fourth and Fifth Amendments, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967); the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J. concurring); the penumbra of the Bill of Rights, *Griswold, supra;* or in the concept of personal liberty guaranteed by the Fourteenth Amendment, *e. g.,* Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

The Court has been particularly sensitive to the right to privacy in areas relating to marriage, procreation, and family life. *See* Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold, *supra;* Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L. Ed. 1655 (1942); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer, supra.*

■ The right to privacy guarantees that in certain personal matters, individuals may conduct their affairs free from interference or regulation by the state. The right derives from the notion of "inviolate personality." Warren & Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 205 (1890). It is an

individual right rather than a right within a legally sanctioned relationship. *E. g., Eisenstadt, supra.*

■ In Roe v. Wade, and Doe v. Bolton, as noted, the Court explicitly ruled that the right to privacy encompasses the decision of a woman to terminate her pregnancy through abortion. *Roe,* 410 U.S. at 153, 93 S.Ct. 705, 35 L.Ed.2d 147. The Court viewed the right as founded in the Fourteenth Amendment's concept of personal liberty contained in the due process clause; it is a personal right guaranteed to the woman involved.

The Court in *Roe* and *Doe* was not faced with the question of whether the right to privacy in regard to an abortion decision extends to minors as well as adults. None of the statutes there considered included parental consent requirements as requisites for abortions to be performed on minors, and the constitutionality of such requirements was expressly left open. *Roe* at 165 n. 67, 93 S.Ct. 705. Opinions of courts that have considered the issue cast considerable doubt on the validity of parental consent statutes. Coe v. Gerstein, 376 F.Supp. 695 (S.D.Fla.1973), app. dism'd for want of jurisdiction, 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974) (Florida's parental consent requirement held unconstitutional); Washington v. Koome, M.D., 84 Wash.2d 901, 530 P.2d 272 (En Banc, 1975) (Dr. Koome was convicted of performing an abortion on a sixteen year old female in violation of Washington's criminal abortion statute requiring parental consent. The Supreme Court of Washington reversed his conviction holding the parental consent requirement unconstitutional as a violation of a minor's right to privacy and equal protection of the laws.); Doe v. Rampton, 366 F.Supp. 189 (C.D.Utah

1973) (Utah abortion statute, including a parental consent requirement, held unconstitutional); Wolfe v. Schroering, 388 F.Supp. 631, (W.D.Ky.1974) (nullifying numerous provisions of the Kentucky abortion statute including parental consent requirement for minors' abortions: ". . . the broad provision as written gives power to the husband or parent to withhold consent without any reason, or without good or sufficient reason, and entirely unconnected with the pregnancy or the woman's health." *Id.* at 636–37); In Re P. J., 65 Daily Washington Law Rptr. 613 (1973) (Superior Court of the District of Columbia—Family Division, Feb. 6, 1973) (an emancipated minor may obtain an abortion without parental consent); *see also* Ballard v. Anderson, 4 Cal.3d 873, 95 Cal.Rptr. 1, 484 P.2d 1345 (En Banc 1971); In Re Smith, 16 Md.App. 209, 295 A.2d 238 (Ct.Spec.App.Md.1972); In Re Diane, 318 A.2d 629 (Del.Ch. 1974).

The validity of parental consent requirements is also currently being litigated in several jurisdictions: *e. g.,* Baird v. Quinn, C.A. No. 74–4992–F (D. Mass., temporary restraining order issued Oct. 31, 1974); Noe v. Packel, C.A. No. 74–954 (W.D.Pa., temporary restraining order issued Oct. 9, 1974); Planned Parenthood et al. v. Fitzpatrick, Civ. No. 74–2440 (E.D.Pa., preliminary injunction issued Oct. 10, 1974); Roe v. Rampton, Civ. No. 74–344 (C.D.Utah, complaint filed Nov., 1974). *See* Lady Jane v. Norton, Civ. No. 74–347 (D. Conn., temporary restraining order issued Oct. 29, 1974); Noe v. True, 507 F.2d 9 (6th Cir. opinion reversing dismissal issued Dec. 5, 1974); Doe v. Weinberger, No. C–74–2481 (N.D.Cal., complaint filed Nov. 26, 1974).[1]

---

1. For additional discussion of the minor's right to privacy in regard to the abortion decision *see* Note, The Minor's Right to Abortion and the Requirement of Parental Consent, 60 Va.L.Rev. 305 (1974); Note, Implications of the Abortion Decisions: Post Roe and Doe Litigation and Legislation, 74 Col.L.Rev. 237, 242–47 (1974); Hofmann and Pilpel, The Legal Rights of Minors, 20

Pediatric Clinics of North America 989 (1973); Note, The Right of a Husband or a Minor's Parent to Participate in the Abortion Decision, 28 U.Miami L.Rev. 251 (1973); Pilpel and Zuckerman, Abortion and the Rights of Minors, 23 Case West.L.Rev. 779 (1972); Pilpel, Minors' Rights to Medical Care, 36 Albany L.Rev. 462 (1972).

## II

Traditionally, minors have not been afforded the full panoply of rights guaranteed to adults under the Constitution. States have been allowed more control and regulation over the affairs of minors than adults in recognition of the states' particular interests in protecting minors and providing for their welfare. *E. g.*, McKeiver v. Pennsylvania, 403 U. S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Ginsberg v. New York, 390 U. S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), rehearing denied, 391 U.S. 971, 88 S.Ct. 2029, 20 L.Ed.2d 887 (1968); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), rehearing denied, 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944). *Cf.* Rowan v. United States Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L. Ed.2d 736 (1970). The special interests of the states in the affairs of minors is demonstrated by the establishment in many states, including Colorado, of separate juvenile court systems which deal exclusively with minors.

However, many fundamental constitutional rights have been extended to minors. The courts have been active in protecting the First Amendment rights of minors to free speech and the exercise of religion, *e. g.*, Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); School District of Abington Township v. Schempp, 374 U.S. 203, 82 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Many procedural due process rights have also been extended to minors, In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *See* Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). While recognizing that minors might not be entitled to all the procedural safeguards granted adults, the Court in *Gault, supra*, expressly stated that ". . . neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *Id.* 387 U.S. at 13, 87 S.Ct. at 1436. *See* Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (illegitimate children entitled to equal protection); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (children entitled to equal protection of the laws in obtaining public education); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (education in accordance with religion); Interstate Circuit v. Dallas, 390 U.S. 676 (1968) (fact that a statute is aimed at protecting children does not mean it may be constitutionally vague); People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967) (minor is not incompetent to waive his constitutional right to remain silent or to have an attorney.).

## III

In our view, the right to privacy as expounded in *Roe* and *Doe* to include a decision to terminate a pregnancy extends to minors. The right is a personal one guaranteeing to the individual the right to make basic decisions concerning his or her life without interference from the government. *Roe*, 410 U.S. at 152–153, 93 S.Ct. 705. Minors are entitled to this personal right as well as adults. The Court in *Eisenstadt, supra*, explained the right to privacy as:

> . . . the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. *Id.* 405 U.S. at 453, 92 S.Ct. at 1038, 31 L.Ed.2d 349. [emphasis supplied]

The state has demonstrated no reason why this personal and fundamental right should not be guaranteed to pregnant women under eighteen as well as those over eighteen. The detriments discussed in *Roe*, 410 U.S. at 153, 93 S.Ct. 705

which would be suffered by a woman should the state totally deny her the choice to have an abortion are equally applicable to a minor as to an adult.

■ The right to privacy in regard to an abortion decision extends to minors, particularly, where as here, the minor is living away from home and has made a voluntary and informed decision regarding abortion. Coe v. Gerstein, *supra*; Doe v. Rampton, *supra*; Wolfe v. Schroering, *supra*; Washington v. Koome, *supra*; In Re P. J., *supra*; *see also* Merrikan v. Cressman, 364 F.Supp. 913 (E.D.Pa.1973) (extending right to privacy to minors in another context); In Re Smith, *supra*. *Contra* Doe v. Planned Parenthood Assn., 29 Utah 2d 356, 510 P.2d 75 (1973), cert. denied, 414 U.S. 805, 94 S.Ct. 138, 38 L.Ed.2d 42 (1973).

■ However, the right to privacy, as is true of other constitutional rights, is not absolute. *Roe*, 410 U.S. at 153–154, 93 S.Ct. 705, 35 L.Ed.2d 147. The Court's decisions recognizing the right of privacy have concluded that some state regulation in the area may be appropriate. The Court in *Roe*, stated:

> We, therefore, conclude that the right of personal privacy includes the abortion decision, but that this right is not unqualified and must be considered against important state interests in regulation. *Id.* at 154, 93 S.Ct. at 727.

Thus the state may infringe on the constitutional right to privacy; however, before it may do so, it must demonstrate interests so compelling as to justify the intrusion on the fundamental right involved. The legislation must be narrowly drawn and confined or restricted to the compelling state interests. *Roe,* at 155–156, 93 S.Ct. 705.

## HAS THE STATE DISPLAYED ANY COMPELLING STATE INTERESTS SUCH AS TO JUSTIFY THE DIFFERENCE IN TREATMENT BETWEEN MINORS AND ADULTS CONTAINED IN THE ABORTION STATUTE?

### I

In considering the interests of the state in regard to C.R.S. § 18–6–101(1) (1973), the central issue is whether the state has a compelling interest in requiring that before any woman under the age of eighteen may obtain an abortion, she must acquire the consent of her parents or guardian.

■ The Court in *Roe* and *Doe* recognized that at some point during pregnancy, the state's interests in maternal health and the life of the fetus become compelling. Thus, after the first trimester, the state's interest in maternal health becomes sufficiently compelling to permit the state to legitimately intervene in order to protect that health by regulating the abortion procedure. This regulation includes requirements relating to the qualifications and licensing of persons who may perform abortions and the regulation of facilities where they may be performed. After the fetus becomes viable,[2] the state may intervene and regulate, or even proscribe, abortions in furtherance of its interest in protecting fetal life.

However, the Court in *Roe* and *Doe*, concluded that there were no compelling state interests which would justify the interference of the state in the abortion decision during the first trimester of a woman's pregnancy. The decision to abort in the first three months is to be made by the woman and her physician alone. *Roe*, at 163–165, 93 S.Ct. 705.

■ The Colorado statute requiring parental consent for an abortion per-

---

2. "Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks." *Roe* at 160, 93 S.Ct. at 730. Viability is a condition in which the fetus "presumably has the capability of meaningful life outside the mother's womb." *Roe* at 163, 93 S.Ct. at 732.

formed on a woman under eighteen does not serve to further these legitimate state interests recognized in *Roe* as it makes no differentiation according to length of pregnancy nor does it specify reasons for which consent may be withheld. The statute contains an unconditional requirement of adult consent regardless of any danger to maternal health or viability of the fetus. We have been shown no distinction in regard to either of these interests between the pregnancy of a minor and that of an adult which would justify the difference in treatment contained in the statute. As the court in Coe v. Gernstein, *supra* stated:

> We are persuaded that if the State cannot interfere to protect the fetus' interest in its potential life until the compelling point of viability is reached, neither can it interfere on behalf of husbands or parents to protect their interests in that potential life until the fetus becomes viable. We are persuaded, also, that if the state cannot interfere to protect the pregnant woman's physical or mental health until approximately the end of the first trimester, neither can it interfere on behalf of husbands or parents to protect their interests in her health until that point is reached. *Id.*, 376 F.Supp. at 697.

In the instant case, plaintiff was in her second trimester of pregnancy. The only legitimate interest recognized by *Roe* which a state may assert during this trimester is an interest in regulating the procedure for obtaining an abortion in order to protect the mother's health. The Colorado statute under challenge goes far beyond furthering that interest. The operation of the statute unequivocally denies plaintiff her choice of obtaining an abortion.

## II

■■ However, a state may have additional interests in regulating a minor's abortion not present in the case of an adult. The major interests asserted by the state in requiring parental consent for a minor's abortion and interests which have been recognized in other contexts in regard to minors are the protection of the minor and providing for her welfare, and fostering parental control.[3] Analysis of these interests demonstrates that they do not justify the blanket requirement of parental or guardian consent contained in C.R.S. § 18–6–101(1)(1973).

The state certainly has some interest in protecting minors from improvident, hasty, and uninformed decisions. The state also has an interest in providing for the well-being of its youth. However, the statute in question does not achieve those objectives.

The Colorado abortion statute makes no exceptions for minors who are supporting themselves, who are mature, emancipated, or those who receive counseling and guidance from physicians or others in regard to the consequences of their decision to have an abortion.

In the present situation, plaintiff is a mature, emancipated woman who made a serious decision to seek an abortion after consultation with a physician, her social worker, and others. The Court conducted its own investigation to determine if plaintiff had made an informed and intelligent decision and concluded that she had. Thus the statute did not operate to protect her from an improvident decision or to protect her welfare, but gave to another absolute authority to decide for her the question of an abortion.

---

3. While defendants did not raise this interest, we note that the Court in *Roe*, rejected the discouragement of illicit sexual conduct as a compelling state interest in the area of abortions. This interest may be greater in the case of a minor, however, we do not believe it can justify the infringement of the minor's right to privacy provided for by the Colorado statute. Morality is not a proper justification for limiting the availability of abortions. Doe v. Rose, 499 F.2d 1112 (10th Cir. 1974).

■ We have considered and reject defendants' argument that the state as *parens patriae* may act to safeguard the well-being of its youth through the statute in question. *E. g., Prince, supra; See* Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). We do not believe that this is a situation where the state is acting as *parens patriae* to protect minors, but rather is affording third parties exclusive control over the activities of minors in this area. That doctrine is inapplicable.

### III

We also note that Colorado has passed several statutes which allow minors to consent to medical care without the necessity of parental consent in various situations: C.R.S. § 13–22–103(1) (1973) (minor over 14 who is living apart from parents and managing his or her own financial affairs or is married may consent to any medical and surgical treatment except abortion); C.R.S. § 13–22–103(3)(1973) (any minor parent may consent to medical care for his or her child); C.R.S. § 13–22–105 (1973) (minor may receive birth control information and devices without knowledge of parents) C.R.S. § 13–22–102(1973) (minor may consent to treatment for drug addiction or use); C.R.S. § 25–4–402(4) (1973) (minor may consent to examination and treatment for venereal disease); C.R.S. § 25–6–102 (1973) (policy statement—all contraceptive devices shall be available to all persons regardless of age).

The state has demonstrated no compelling reason why abortions should be singled out for different treatment than other surgical procedures. The statutory exception contained in the challenged statute seems inconsistent with the philosophy of the state to allow minors, particularly emancipated ones, to consent to virtually any other medical treatment. The state has not demonstrated that its interest in protecting minors and providing for their well-being is different in the case of abortions than in regard to other medical procedures.

### IV

The interest of the state in fostering parental control or parental interests and responsibility in raising their children is perhaps the strongest interest asserted by the state in regard to the statute. The Supreme Court has recognized that:

> The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition. Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972).

*See* Prince v. Massachusetts, *supra*; Pierce v. Society of Sisters, 268 U.S. 510 (1925); Meyer v. Nebraska, *supra*. Rowan, *supra*.

However, those cases which have considered parental control of children have involved conflicts between parents and the state wherein the courts have considered intrusions by the state into the area of parental values—particularly religious values. Cases which have upheld parental control have not involved a situation where the parent and child differ and the state is imposing the parents' views on the minor.

These cases are thus inapplicable to the instant question. We do not believe that the state has demonstrated that its interest in fostering parental control is sufficiently compelling to justify the broad and unrestricted intrusion into a minor's own constitutional rights which is the result of the application of the statute in question.

### V

We conclude that the state has not shown that its interests in protecting minors or fostering parental control are sufficiently compelling to justify a blan-

ket requirement of parental or guardian consent in all cases of minors seeking abortions.[4] Nor is the statute narrowly drawn to legitimately further those interests.

## THE NECESSITY FOR APPOINT-MENT OF A GUARDIAN AD LITEM

We reject defendants' argument that a guardian must be appointed under Rule 17(c) Fed.R.Civ.Proc. to bring this action on behalf of plaintiff.

The suggestion in Rule 17(c) that a guardian be appointed to represent an infant or incompetent in court is not mandatory; the necessity of any procedure to protect the rights of minors in court is discretionary with the court. Rule 17(c) states explicitly that the court shall appoint a guardian or "make such other order as it deems proper for the protection of the infant or incompetent person." *See* 6 Wright & Miller, Federal Practice and Procedure, ¶ 1560, at 773 (1972); 3A Moore, Federal Practice, ¶ 17.26 at 907 (1974).

We conclude that plaintiff's interests were sufficiently protected by her attorneys and social worker in this matter so as to obviate the necessity of appointment of a guardian to represent her. She has evidenced understanding of the legal and personal implications of this action and is capable of bringing the action on her own behalf. Her legal interests were fully protected by her attorney and case worker throughout the course of this litigation. We decline to appoint a *guardian ad litem* to represent her in the litigation.

## PLAINTIFF'S STANDING TO SUE

We are not persuaded by defendants' argument that plaintiff has no standing to attack the Colorado statute on equal protection grounds. Defend-

ants argue that at the time of filing the action plaintiff was not "managing [her] own financial affairs" as provided for in C.R.S. § 13–22–103 (1973). This statute provides that a minor over fourteen who is living apart from his or her parents and is managing his or her financial affairs may consent to any medical treatment for himself or herself without parental knowledge or consent. Abortions are excepted from provisions of this statute.

Whether or not plaintiff was managing her own affairs so as to come within C.R.S. § 13–22–103 (1973) is irrelevant to her challenge to C.R.S. § 18–6–101(1); she need not fulfill the requirements of the former statute in order to challenge the constitutionality of the latter abortion statute. We conclude that plaintiff has standing to challenge the constitutionality of C.R.S. § 18–6–101(1) (1973) on equal protection grounds.

## CERTIFICATION OF QUESTIONS TO THE COLORADO SUPREME COURT

### I

We have considered and reject defendants' request for certification of certain questions concerning the Colorado Children's Code, C.R.S. § 19–1–101 et seq. (1973), to the Colorado Supreme Court. Defendants contend that construction of the Code by the Supreme Court may eliminate the necessity of our ruling on the constitutional issues concerning the challenged statute. Defendants argue that plaintiff's rights may be adequately protected by proper construction of that Code so as to establish jurisdiction in the Juvenile Courts or State District Courts in abortion cases affecting minors.

In our view even should the Supreme Court construe the Children's Code in a manner to give the Juvenile Courts or

---

4. It is noteworthy that the Revised Uniform Abortion Act drafted by the National Conference of Commissioners of Uniform State Laws (1973) included in its section requiring that consent of the woman be obtained before an abortion may be performed a specific statement that minors may consent to abortions: "A woman is not incapable by reason of her minority of giving consent to an abortion under this Act." (Section 3).

State District Courts jurisdiction in a case such as this, this does not alter the fact that there is a separate criminal abortion statute in effect which makes it a crime for an abortion to be performed on a minor without the consent of a parent or guardian. Plaintiff is challenging the necessity of any consensual requirement whether given by a guardian appointed by the court, by the court itself, or otherwise. The potential interpretation of the Children's Code which defendants suggest would still require the consent of a guardian before an abortion could be performed on a minor, and in our view this interpretation would not alleviate the overbreadth of the challenged statute in its blanket requirement that parental or guardian consent must be obtained in all cases and without regard to the reasons for which this consent may be withheld. The Colorado Supreme Court's interpretation of the applicability of the Children's Code would not face the direct question of the constitutionality of the statute. The statute is not susceptible to state judicial construction or interpretation which would render unnecessary a decision on the constitutional issues raised. *See* Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L. Ed.2d 515 (1971).

## II

We also note that procedures under the Children's Code require that the Juvenile Court acquire jurisdiction over the child through formal petitioning of the court. These petitions are based on findings such as that the child is dependent and neglected or in need of supervision—conclusions which would not be applicable in many cases in which a minor seeks an abortion such as the one we are considering. Thus the rights of some minors would not be protected through utilization of the Children's Code. In our case, though plaintiff was living in a foster home, there was no evidence that she should or could have been brought within the jurisdiction of the Denver Juvenile Court. We did, in fact, require the parties to explore the possibility of pursuing this matter in Juvenile Court (Denver) before the Temporary Restraining Order was issued. As related to us informally, there was considerable disagreement within that court as to whether it could act in the area of abortions and procedures to be utilized in that regard. We thereafter concluded that resort to the Juvenile Court was inappropriate in light of the necessity of immediate action.

█ We note also that it is not necessary in a challenge to the constitutionality of a state statute under 42 U.S.C. § 1983 for a plaintiff to pursue a remedy in state courts before bringing the federal action. Zwickler v. Koota District Attorney of Kings County, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); McNeese et al. v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

We agree with defendants that the juvenile courts might be better equipped to handle the problem of minors seeking abortions and we would encourage legislation directed to that end. We are satisfied that the Colorado legislature will examine this sensitive area and may decide to set forth a procedure which would enable state courts to respond to these situations calling for immediate action. However, we do not believe that any construction of the Children's Code at this point would satisfy the constitutional challenges raised to the separate criminal abortion statute under attack here. Therefore, we conclude that certification of questions to the Supreme Court in this litigation is not warranted.

We are not persuaded by defendants' argument that we should consider the abortion statute in conjunction with the Colorado Children's Code. We do not believe this procedure is appropriate in this case which challenges only the constitutionality of the separate criminal abortion statute. Thus we have considered the constitutionality of C.R.S. §

959

18–6–101(1) (1973) without regard to the Colorado Children's Code.

## CONCLUSION

There is a fundamental right to privacy which encompasses the right of a woman to decide to terminate her pregnancy. This right extends to minors as well as adults. However, the state does have some interests in the regulation of abortions and has some legitimate interests in regulating the abortions of minors to a greater extent than it does those of adults. In order to justify the infringement of a minor's right to privacy, however, the state must show that it has compelling interests which are furthered by a narrowly drawn statute.

The state has not demonstrated any compelling interests in regard to C.R.S. § 18–6–101(1) (1973) which will overcome the fundamental right of plaintiff to privacy and equal protection of the laws. None of the interests urged by the state are sufficiently compelling to justify the statute's broad requirement that parental or guardian consent must be obtained in every case of a minor seeking an abortion. In effect, this statute denies a minor the individual ability to decide to terminate her pregnancy solely because of her age. The state may well have some legitimate interests in the regulation of a minor's abortion which differ from its interests in regard to an adult's abortion; however, this statute is not drawn so as to further only those interests.[5]

Accordingly, it is hereby ordered that C.R.S. § 18–6–101(1) (1973) insofar as it requires the consent of a parent or guardian before a minor may obtain an abortion is declared unconstitutional, and consequently invalid.

It is further ordered that the issues are resolved in favor of the plaintiff and against the defendants.

Judgment shall enter for the plaintiff.

5. We are not ruling on the requirement of spousal consent to an abortion as contained in the statute.