Jane DOE, by her next friend, Victory Peterson, Plaintiff,

v.

J. James EXON, Governor of the State of Nebraska, et al., Defendants.

No. CV75–L–146.

United States District Court, D. Nebraska.

Nov. 3, 1975.

Terry K. Barber, Lincoln, Neb., for plaintiff.

Terry R. Schaaf, Sp. Asst. Atty. Gen., Lincoln, Neb., for defendants.

Before ROSS, Circuit Judge, URBOM, Chief District Judge, and VAN PELT, Senior District Judge.

MEMORANDUM OPINION

PER CURIAM.

This case is before us on plaintiff Jane Doe's motion for a preliminary injunction against enforcement of Nebraska's statute requiring a parent's consent for abortion for his or her minor child. Neb.Rev.Stat.

§ 28–4,151 (Supp.1974).[1] A three-judge court was convened under 28 U.S.C. § 2281. Doe is an unmarried woman 17 years of age who is in her first trimester of pregnancy. Defendants are the Governor of Nebraska, the state's attorney general, and the Douglas County Attorney, which is the county where plaintiff desires to have an abortion performed. A hearing on the motion was held, and on October 8, 1975, we granted the preliminary injunction for reasons explained herein.

At the hearing the plaintiff and her doctor testified. Doe has been counseled in this matter by her parole officer, her counselor at the Child Guidance Center, her foster mother, her doctor, and her boyfriend, who is not the father of the child. She was raised as a Catholic, but has no strong religious feelings concerning abortion. Her mother initially indicated that she would consent to her daughter's abortion; however, after speaking with her clergyman she decided that she could not consent because of religious principle.

We find that Jane Doe has been fully informed and is aware of the alternatives open to her and of the consequences of each. We find that she is desirous of terminating her pregnancy by abortion and that she is mentally and emotionally capable of giving informed consent to her own abortion. At the time of the issuance of the preliminary injunction, her pregnancy was near the end of its first trimester.

■ To prevail on a motion for a preliminary injunction the movant must show 1) that there is a substantial likelihood that she will be successful at trial; and 2) she will be irreparably harmed in the absence of injunctive relief. Foreseeable harm to other interested parties and the effect on the public interest may also be considered. *Minnesota Bearing Co. v. White Motor Corp.,* 470 F.2d 1323, 1327 (8th Cir. 1973); 7

J. Moore & J. Lucas, Moore's Federal Practice 65–39–65–45 (2d ed. 1975).

■ Although we do not now finally decide the question, it is highly probable that Doe will be successful in challenging the constitutionality of Neb.Rev.Stat. § 28–4,-151 (Supp.1974). In *Roe v. Wade,* 410 U.S. 113, 155, 162–164, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court held that a woman's right of privacy, embodied in the due process clause of the fourteenth amendment, outweighs any interest of the state in regulating her pregnancy during the first trimester. During the second trimester, the Court recognized that there might be a legitimate state interest in maternal health, and subsequent to the viability of the fetus, further regulation in the interest of potential human life may be justified. The Court reserved ruling on whether the state could require parental consent as a condition for obtaining an abortion. *Roe v. Wade, supra,* 410 U.S. at 165, n.67, 93 S.Ct. 705.

The right of privacy would seem to be applicable to minors as well as adults, *Poe v. Gerstein,* 517 F.2d 787, 791 (5th Cir. 1975); *Foe v. Vanderhoof,* 389 F.Supp. 947, 953 (D.Colo.1975). It may be that the state can justify regulation of minors' lives in ways which would not be allowable for adults. However, we doubt that Nebraska can demonstrate an interest which necessitates this regulation of pregnancies of those minors who have the capacity to voluntarily make an informed decision to seek an abortion. *Foe v. Vanderhoof, supra,* 389 F.Supp. at 955–956. If the state does not possess this right of regulation, it cannot delegate veto power to parents or others. *Coe v. Gerstein,* 376 F.Supp. 695, 697–699 (S.D.Fla.1973), *appeal dismissed and cert. denied,* 417 U.S. 279, 280, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974), *aff'd in part on other grounds,* 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974), *aff'd sub nom., Poe v. Gerstein,* 517 F.2d 787 (5th Cir. 1975).

---

1. Neb.Rev.Stat. § 28–4,151 (Supp.1974):

   Abortion; written consent of parent or guardian. No abortion shall be performed or prescribed on any minor child in the State of Nebraska without her written consent and the consent of the parent or guardian of such minor child.

   Neb.Rev.Stat. § 28–4,153 (Supp.1974) provides for imprisonment for six months to a year for violation of § 28–4,151.

Perhaps the most plausible reason which may be advanced in support of the constitutionality of § 28–4,151 is the state's duty to assist parents in raising their children. But it is difficult to see any parental interest in this matter which overrides the pregnant minor's right to decide whether to give birth. *Poe v. Gerstein, supra,* 517 F.2d at 793–794; *Baird v. Bellotti,* 393 F.Supp. 847, 856–857 (D.Mass.1975), *appeal docketed,* 423 U.S. 982, 96 S.Ct. 390, 46 L.Ed.2d 301, 44 U.S.L.W. 3086 (1975). Since the parents' rights do not appear to be significant in comparison to those of their pregnant child, we doubt Nebraska can justify its parental veto abortion statute as necessary to protect valid parental interests.

Since *Roe v. Wade, supra,* and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), a number of courts have held statutes requiring parental consent for abortions unconstitutional relying on the right of privacy rationale announced by the Court in those cases. *E. g., Poe v. Gerstein, supra; Baird v. Bellotti, supra; Foe v. Vanderhoof, supra; Wolfe v. Schroering,* 388 F.Supp. 631, 636–637 (W.D.Ky.1974); *Doe v. Rampton,* 366 F.Supp. 189, 193 (D.Utah 1973); *State v. Koome,* 84 Wash.2d 901, 530 P.2d 260, 266 (1975) (en banc). We have found only one case in which a parental veto statute, such as Nebraska has, was upheld. *Planned Parenthood v. Danforth,* 392 F.Supp. 1362, 1370–1371 (E.D.Mo.1975) (Webster, Circuit Judge, dissenting), *prob. juris. noted,* 423 U.S. 819, 96 S.Ct. 31, 46 L.Ed.2d 36, 44 U.S.L.W. 3200 (1975). The district court opinion in that case was filed January 31, 1975, and an appeal to the Supreme Court was filed on February 5, challenging *inter alia,* the holding that the parental consent provision of Missouri's abortion law was constitutional. We think it significant that on February 18, 1975, the Supreme Court took the unusual step of staying enforcement of the Missouri abortion statute pending appeal. This was done long before probable jurisdiction was noted. Under these circumstances we would be inclined to regard *Danforth* as doubtful precedent even if we found its reasoning

persuasive. As it is, we prefer the analyses offered by the majority of courts which have considered the issue, and therefore we find that Doe will be likely to succeed at trial in this case. Our final decision as to the constitutionality of the statute in question will, however, await the determination of *Planned Parenthood v. Danforth, id.,* by the Supreme Court.

We also find that Doe will be irreparably harmed if relief is not forthcoming. Her testimony establishes that she anticipates acute peer disapproval and ostracism if she is forced to see her pregnancy through its full term. She also fears the emotional trauma inherent in carrying the child for nine months and giving birth, then placing it for adoption. The Supreme Court has recognized the harm which may result in such situations.

> Maternity . . . may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved.

*Roe v. Wade, supra,* 410 U.S. at 153, 93 S.Ct. at 727. We agree with the Fifth Circuit that these considerations apply with greater force when the pregnant female is a minor. *Poe v. Gerstein, supra,* 517 F.2d at 791.

At the hearing held on October 8, 1975, Doe's doctor testified that if the abortion was to be performed, it should be performed at once since Doe was nearing the end of her first trimester. The primary reason given was the safety factor resulting from being able to perform a suction curretage at this stage of the pregnancy. A suction curretage is not generally permissible after the first trimester. Any delay would have meant that a saline abortion

would have to be performed, which is about ten times as risky as the suction method, according to the doctor's testimony. For this reason, and those already given, we issued the temporary restraining order prior to the preparation of this memorandum opinion.

We believe that harm to other parties which may result from the requested relief does not outweigh the harm to Doe if the preliminary injunction is denied. As we have previously stated, we can see no parental interest which compares to the right of privacy which the fourteenth amendment guarantees to Doe in this matter. *Baird v. Bellotti, supra*, 393 F.Supp. at 856–857. And we believe that *Roe v. Wade, supra*, 410 U.S. at 155, 162–164, 93 S.Ct. 705; and *Doe v. Bolton, supra*, 410 U.S. at 194–195, 197–200, 93 S.Ct. 739, illustrate that no harm to any *valid* state interest is likely to result if injunctive relief is granted. The same may be said for any possibility of harm to the public interest. Our order was narrowly drawn and applies only to the plaintiff, Jane Doe.

■ At the hearing on the motion for a preliminary injunction counsel for the state orally moved to dismiss for failure to join Doe's parents as necessary parties under Fed.R.Civ.P. 12(b)(7) and 19(a). What we have said concerning parents' interests in their daughter's pregnancy, relative to the interest of the minor herself, applies here as well. Therefore the motion to dismiss has been denied. Defendants also moved for appointment of a guardian ad litem under Fed.R.Civ.P. 17(c). That motion was denied, since Doe is suing by her next friend. This is expressly authorized by Fed.R.Civ.P. 17(c) and Nebraska law. Neb.Rev.Stat. § 25–307 (1964).

Since we believe that Doe is likely to prevail on the merits at trial of this case and has shown the possibility of irreparable harm if relief is denied, and since that possibility outweighs the likelihood of harm to other interested parties or to the public interest if relief is granted, preliminary injunctive relief is appropriate in this case.